IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHUCK V. DENINNO,

              Plaintiff,                               05cv1755

      v.                                         Electronically Filed

MUNICIPALITY OF PENN HILLS,
HOWARD DAVIDSON, *Director of Planning*
*and Economic Development for Penn Hills,*
*in his official capacity, and in his individual capacity*,
DOM COSTA, *Public Safety Director of Penn Hills,*
*in his official capacity, and in his individual capacity,*
DAVID S. DREW, *of the Penn Hills Police Department,*
*in his official capacity, and in his individual capacity,*
MARLA MARCINKO, *Manager of the Municipality of Penn Hills,*
*in her official capacity, and in her individual capacity, and*
ANTHONY DELUCA, JR., *Mayor of Penn Hills,*
*in his official capacity, and in his individual capacity,*

              Defendants.

## <u>MEMORANDUM OPINION</u>

**January 31, 2007**

      **Introduction.**

      Before the Court is the motion for summary judgment filed by defendants, the

Municipality of Penn Hills, Howard Davidson, Director of Planning and Economic

Development, Police Officer David Drew, Dom Costa, Public Safety Director, Marla Marcinko,

Manager, and Mayor Anthony Deluca, Jr. (doc. no. 55).  After careful consideration of plaintiff's

amended complaint, defendants' motion for summary judgment and plaintiff's response thereto,

the memoranda of law in support and in opposition, and the material facts adduced and proffered

by the parties to support their respective positions, the Court will grant summary judgment in

favor of defendants and against plaintiff on all of his civil rights claims.

Plaintiff Chuck V. DeNinno, through his counsel, previously withdrew a number of state law claims in his brief in opposition to defendants' motions to dismiss, namely: plaintiff's claims under the Pennsylvania Constitution, plaintiff's claims under the Pennsylvania "common law" and "Right to Know Act," and plaintiff's claims for punitive damages against the Municipality of Penn Hills. Although plaintiff also stated that he was voluntarily dismissing his claims under 42 U.S.C. §1983, because section 1983 "confers no substantive rights" (Brief in Opposition to Motion to Dismiss, doc. no. 39, at 9), he did not voluntarily dismiss his federal constitutional claims under the First, Fourth and Fourteenth Amendments to the Constitution of the United States, and because section 1983 is the proper vehicle by which to redress violations of federal constitutional rights in federal court, the Court did not dismiss the section 1983 claims or the underlying constitutional claims.  Viewed in light of the requisite liberal pleading standards, this Court could not say, at the motion to dismiss stage of the proceedings, that plaintiff would not be able to state a set of facts to support his remaining claims, and denied the motions to dismiss with regard to plaintiff's constitutional claims, without prejudice to defendants raising the issues set forth therein in motions for summary judgment at the appropriate time following discovery. Discovery having been completed, it is now the appropriate time, and defendants have filed a compelling motion for summary judgment.

**Background Facts from Evidence Produced on Motion for Summary Judgment.**

The record produced in support and in opposition to summary judgment discloses the following:  All of the claims presented stem from a series of interactions between plaintiff,

Chuck V. DeNinno and various officers and employees of the Municipality of Penn Hills,

starting in fall 1999.  In October 1999, Penn Hills approved plaintiff's site plan for development

of property he owns in Penn Hills which he intends to develop for commercial use, and issued a

grading permit. When plaintiff began to develop the property, defendant Davidson, as Director of

the Planning and Economic Development Department, deemed his development to be

inconsistent with the approved site plan and local ordinances, and he revoked the grading permit

for the site.  In December, 2002, plaintiff was given a citation for grading his property without a

permit.

Subsequently, plaintiff began to submit site plan applications to the Planning

Commission, accompanied each time by the $200.00 filing fee, which the Planning Commission

deemed deficient for various reasons.  The fees are imposed to cover the cost of reviewing the

applications by engineers and Penn Hills planners, and to inspect the property, and therefore, are

not refunded to unsuccessful applicants.  Applicants do not appear before the Planning

Commission until their site plans have been initially approved as satisfying the prerequisites.

Davidson advised plaintiff in writing each time his application was rejected, and advised him

how to go about correcting the deficiencies.

One significant deficiency that Davidson pointed out to plaintiff repeatedly, among other

things, was that the ownership of portions of his property was disputed by Joseph and James

Dellach, owners of adjoining property on which they ran an auto body business.  Davidson

advised plaintiff that Penn Hills would not approve any site plan applications while ownership of

the property was being contested. The Dellachs claimed that their parking lot at the auto body

shop was within the boundary of a disputed abandoned railroad right-of-way shared with plaintiff's property, and brought a quiet title action against plaintiff in the Court of Common Pleas of Allegheny County. After obtaining a preliminary injunction against plaintiff, Judge Farino, after a bench trial, dissolved the preliminary injunction and dismissed the quiet title action. The Dellachs appealed.

On appeal, the Pennsylvania Superior Court held that the Dellachs were the fee simple owners of one-half of the right-of-way upon its abandonment by the railroad. *Dellach v. DeNinno,* 862 A.2d 117 (Pa.Super. 2004), petition for allowance of appeal denied, 882 A.2d 479 (Pa. 2005). Because the property dispute provides important background to the claims raised by plaintiff in his Amended Complaint, the Court quotes from the Superior Court opinion as follows:

> The facts and procedural history, as supported by the certified record, are as follows. In 1972, United Railroad Corporation abandoned a 66-foot-wide railroad right-of-way along the Plum Creek Branch of the Pennsylvania Railroad. In May 1996, United Railroad Corporation, et al., executed a quitclaim deed to Dennis John Brooks, purporting to convey this right-of-way. In November 2000, Appellee Chuck V. DeNinno obtained that quitclaim deed from Brooks. DeNinno began work along this right-of-way, including digging trenches and dumping bricks therein.
>
> [The Dellachs] own an auto body shop. Their deed lists the right-of-way as one of the property's boundaries. The paved parking lot used by the body shop is within the boundaries of the disputed right-of-way. [The Dellachs], DeNinno and other owners of the surrounding parcels also use an access road that transverses the right-of-way to reach their respective properties.
>
> [The Dellachs] filed a complaint seeking to quiet title over the right-of-way in the Court of Common Pleas of Allegheny County. A preliminary injunction was subsequently issued, ordering [DeNinno] to stop using [the Dellachs'] parking lot and limiting [DeNinno] from working on the

4

disputed area. A bench trial was held following which the court issued an adjudication and decree nisi dissolving the preliminary injunction and dismissing the action to quiet title. A motion for post-trial relief was filed and denied. This timely appeal followed.

[The Dellachs] raise several issues for our review. However, we will only address the central issue concerning [their] claim of ownership to the right-of-way, as it was the only issue decided by the trial court.

\*   \*   \*

When a railroad abandons an easement, the right-of-way is extinguished and the land is owned in fee simple by the owner or owners of the land on either side of the right-of-way. . . . At the time of abandonment of the right-of-way, the property bordering one side of the right-of-way was owned by [the Dellachs'] predecessors in title, George M. and Theodora Beatty. Accordingly, at the time of the abandonment, the Beattys became owners in fee simple of the half of the right-of-way bordering their property.

The trial court found this much, but further found [the Dellachs] were not the rightful owners of half of the right-of-way because their deed did not include this parcel of land. We disagree. As stated above, [the Dellachs'] deed listed the right-of-way as a boundary. Accordingly, the following law applies:

It is well settled that a grant of land bounded by or abutting on a public highway is presumed to carry the fee to the center line of such highway or easement[.] A railroad is a highway within the meaning of this rule[.] . . .

Accordingly, we find the 33-foot-wide portion of the abandoned 66-foot-wide right-of-way that borders [the Dellachs'] property is theirs in fee and that the trial court erred in dismissing the action to quiet title. We reverse the order and remand for any necessary related proceedings consistent with the holding of this opinion and for entry of an appropriate order.

Order reversed. Case remanded. Jurisdiction relinquished.

*Dellach v. DeNinno*, 862 A.2d at 118-119 (footnotes and citations omitted).

On September 16, 2002, plaintiff filed a statutory appeal in the Court of Common Pleas

of Allegheny County, challenging the Planning Commission's revocation of his grading permit.

5

That Court denied his statutory appeal, but upon appeal to the Pennsylvania Commonwealth Court, plaintiff was successful.  On December 30, 2004, the Commonwealth Court of Pennsylvania vacated the order of the Court of Common Pleas of Allegheny County and remanded for further proceedings.

On March 24, 2005, the Planning Commission approved a site plan submitted by plaintiff subject to ten conditions, and plaintiff signed a document agreeing to those conditions. Following the remand from the Commonwealth Court, Penn Hills filed a motion in plaintiff's statutory appeal to remand to the Planning Commission, and plaintiff filed a motion to reinstate the grading permit.  President Judge Joseph James of the Court of Common Pleas entered an Order on October 25, 2005, directing Penn Hills to issue a grading permit to plaintiff, pursuant to the site plan approval of March 24, 2005, upon receipt of a contour map with a surveyor's seal affixed, and further ordered that plaintiff must comply with all ten conditions, and indicated that all parties agreed to the terms of the order.

Defendants maintain that eight of those ten conditions for site approval remain unfulfilled, despite plaintiff's numerous applications for approval, and they offer evidence to support their assertion, including affidavits, correspondence and other documentary evidence. For his part, plaintiff concedes that he has not complied with all of the conditions for site plan approval, and he does not offer any evidence to counter the defendants' "eight of ten" assertion, but he states that he has tried to the best of his ability to achieve the conditions.  Plaintiff did not return to the Court of Common Pleas of Allegheny County to seek enforcement by way of contempt petition or other procedure, as he might have if he believed he had complied with all

6

conditions for approval, and instead, filed his complaint with this Court.

Apparently frustrated at the slow progress and thinking he was getting the proverbial run around, plaintiff sent profane and harassing correspondence to Penn Hills officials, including Davidson, the Municipal Manager, and the solicitor.  Plaintiff also became belligerent and intimidated personnel at the municipal building (clerks in the finance office and in the front office and their supervisors) on multiple occasions by his disruptive and abusive language and behavior, including making sure that employees and staff were aware he had a permit to carry a weapon.  Plaintiff denies there were "multiple occasions" of disruptive behavior, but does admit to one incident in which he became hostile and profane toward former Municipal Manager, Peter Colangelo, but says the 'commotion" was mutual and that he calmed down and that was the end of it.  Nevertheless, triggered by that incident, defendant Costa, Director of Public Safety, issued a directive in July 2005 that plaintiff was to be accompanied by a police officer at all times while he was in the municipal building.  There were no restrictions on where or when plaintiff could be in the building, only that he needed to be accompanied by a police officer while he was there. Plaintiff complains that, on occasion, he had to wait up to a half hour for an escorting officer to arrive.

An incident on February 9, 2005 generates several of plaintiff's claims.  On that date, Officer Drew received a call that there was a commotion in the Dellach's parking lot, and when he arrived, this is the volatile scene with which he was confronted: plaintiff had placed concrete blocks weighing two-tons apiece across a portion of the Dellachs' parking lot which plaintiff insisted he owned, the Dellachs had apparently removed some of the blocks to another area on

their property, and plaintiff had moved a bulldozer into place to stop them from removing more blocks.

Plaintiff concedes that Officer Drew was attempting to diffuse the confrontational situation.  Both plaintiff and the Dellachs showed Officer Drew conflicting maps to show the boundaries of their respective properties, and Officer Drew wisely summoned Director Davidson to interpret the maps.  Being very familiar with the properties and the boundary dispute, Davidson determined that plaintiff's blocks were on the Dellachs' property.  Officer Drew  told the Dellachs to return the blocks they already had moved to plaintiff, and decided to issue plaintiff a citation for trespass.  (A Pennsylvania District Judge eventually dismissed the citation because he was not going to get involved in a property dispute between neighbors.)

Officer Drew either requested [defendants' version] or ordered [plaintiff's version] plaintiff to wait while he issued the citation.  Plaintiff claims Drew "touched" him at that point and he did not feel free to leave.  There is no dispute that Officer Drew did not place plaintiff in the squad car, did not grab or handcuff him, and did not otherwise interfere with his movement, that he issued the citation within minutes, and that plaintiff was either on or adjacent to his own property at all times.

**Summary Judgment Standards.**

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of*

*Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted).  In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will

bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

The Court will examine plaintiff's claims in light of these standards.

### Counts I through IV.  Claims Arising from Directive That Plaintiff Be Accompanied by Police Officers When Entering and Using the Penn Hills Municipal Building.

Plaintiff's Amended Complaint claims defendants violated various constitutional provisions when defendant Dom Costa, then the Public Safety Director of Penn Hills, directed that a Penn Hills police officer must accompany plaintiff at all times when he is in the municipal building.  Count I purports to state a claim against Costa and Penn Hills for "Seizure in Violation of the Fourth and Fourteenth Amendments." Complaint, ¶¶ 10-13.  Count II purports to state a claim for a "Violation of the Equal Protection Clause of the U.S. Constitution." Complaint, ¶¶ 14-16.  Count III claims "Violations of the First Amendment to the U.S. Constitution." Complaint, ¶¶ 17-19. Count IV repeats these constitutional claims against Costa, Penn Hills and "any other Defendants," pursuant to section 1983, 42 U.S.C. §1983.

10

Under 42 U.S.C. § 1983, an individual may bring a suit for damages against any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the United States Constitution or federal law. *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist*., 422 F.3d 141, 146 (3d Cir. 2005).  With regard to plaintiff's Fourth Amendment claim that Officer Drew unlawfully seized him when he "touched" him and "ordered" plaintiff to stay while he drafted a citation, the United States Court of Appeals for the Third Circuit recently summarized the law:

> The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The Supreme Court has held that the Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers . . . . "The Fourth Amendment's 'principal concern ⋯ is with intrusions on privacy,' and therefore when the infraction deals not 'with the initial decision to detain an accused and the curtailment of liberty that such a decision necessarily entails, but rather with the conditions of ongoing custody following such curtailment of liberty,' then the claim invokes principles of substantive due process." . . . .

> A seizure occurs for Fourth Amendment purposes when "a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988). Based upon Shuman's uncontroverted testimony, he was told to remain in the conference room under Gale's direction for several hours and was not free to leave. He thus appears to have been "seized" within the meaning of the Fourth Amendment. See *Doe v. Haw. Dep't of Educ*., 334 F.3d 906, 909 (9th Cir. 2003) (finding student held to tree with tape for five minutes seized within meaning of Fourth Amendment); cf. *Gottlieb*, 272 F.3d at 172 (finding momentary use of physical force by teacher not seizure within meaning of Fourth Amendment). Nonetheless, that Shuman was "seized" is but the first part of the analysis. It must still be determined whether the seizure constituted a violation of his Fourth Amendment rights.

> With limited exceptions, a search or seizure requires either a warrant or probable cause. See, e.g., *Camara v. Mun. Court*, 387 U.S. 523, 528-29, 87 S.Ct. 1727 (1967) ("[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it

has been authorized by a valid search warrant."); *T.L.O.*, 469 U.S. at 340-41
("Ordinarily, a search-even one that may permissibly be carried out without a
warrant-must be based upon 'probable cause' to believe that a violation of the
law has occurred.").

*Shuman ex rel. Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 146-47 (3d Cir. 2005)

(parallel and certain other citations omitted).

Plaintiff cannot be said to have been "seized" by defendant Costa's directive, nor was his

freedom to move about the municipal building restricted in any significant way; any harm caused

by plaintiff's brief wait for an available police officer to accompany him is *de minimis* and does

not amount to a constitutional deprivation.  Plaintiff also attempts to massage the Fourth

Amendment claim into an equal protection claim, but he points to no evidence to show that other

similarly situated residents of Penn Hills behaved in like manner and were not subject to a

directive that he or she be accompanied by a police officer while in the building, nor does he

offer any evidence that his speech or any other First Amendment activities were curtailed in any

way by the directive.  These claims must be resolved, therefore, in favor of defendants.

### Counts VII Through IX.  Claims Arising from Citation for Trespass Issued to Plaintiff on February 9, 2005.

The Amended Complaint alleges that on February 9, 2005, Penn Hills Police Officer

David Drew, following the order, custom or policy of defendant Howard Davidson, Director of

Planning and Economic Development for Penn Hills,  "arrested" plaintiff pursuant to Penn Hills'

custom, policy or practice, and charged him with criminal trespass for placing concrete blocks on

his property, blocking the adjacent property owners' ingress and egress to their parking lot;

plaintiff claims the neighbor had "appropriated" his property for parking. Count VII, "False

12

Arrest in Violation of the Fourth and Fourteenth Amendments to the U.S. Constitution," claims

that Officer Drew and Davidson deliberately "arrest[ed] Plaintiff under false allegations."

Complaint, ¶¶ 31-34. Count VIII states a claim for "Violation of the Equal Protection Clause of

the U.S. Constitution."  Complaint, ¶¶ 35-37. Count IX repeats these constitutional claims

against defendants Drew and Davidson,[1] pursuant to section 1983, 42 U.S.C. §1983.

Under the record evidence adduced, a reasonable jury could not find that plaintiff's

freedom of movement was impeded in any significant way when Officer Drew directed him to

remain on or near his property while he took the few minutes to write a citation for trespass.  In

short, a reasonable person in Mr. DeNinno's place would not have felt restrained by officer

Drew, nor would he have felt that he was not free to leave.  Even if one could equate "touching"

plaintiff with a seizure, there also is no doubt that Drew had probable cause to detain plaintiff

while he issued the citation.

Moreover, Officer Drew and defendant Davidson had qualified immunity for their

conduct.  As *Dellach v. DeNinno* demonstrates, Davidson's belief about the property boundaries

was accurate and reasonable, and both he and Officer Drew acted reasonably in issuing a citation

for trespass. See, e.g., *Saucier v. Katz*, 533 U.S. 194, 206 (2001); *Curley v. Klem*, 298 F.3d 271,

277 (3d Cir. 2002) (citing *Saucier*, 533 U.S. at 201).  If an officer's mistake as to what the law

---

[1] The Amended Complaint is vague and non-specific with regard to which defendants are charged with the various constitutional violations.  The Court will identify the applicable defendants where possible. The Court agrees with defendants that neither the Amended Complaint nor the plaintiff's counter-statement of material facts set forth any specific averments about any conduct by defendants Marla Marcinko or Anthony Deluca, Jr. that would support any of his claims against them, and the Court will grant summary judgment in their favor.  See *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (individual liability can only be imposed under section 1983 if the state actor played some affirmative role in the alleged deprivation).

requires is reasonable, the officer is entitled to qualified immunity. *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006). Here, Drew and Davidson's view of the law regarding the property dispute not only was reasonable, it was correct, and they are entitled to qualified immunity.

Plaintiff also attempts to massage the Fourth Amendment claim into an equal protection claim, but he points to no evidence to show that other similarly situated residents of Penn Hills placed blocks on a neighbor's property [or engaged in similar self-help, dispute resolution] and were not issued citations. All claims arising from the February 9, 2005, incident, therefore, will be resolved in defendants' favor.

### Counts XI Through XIV.  Claims Arising from Citation for Grading Without Permit on December 17, 2002 and Refusal to Issue Site Plan Approval and Grading Permit in Violation of Fifth and Fourteenth Amendments

Plaintiff alleges in his Amended Complaint that after applying for and receiving a permit to grade his property on February 26, 2001, unidentified "defendants" subsequently revoked his permit without a hearing or notice on August 26, 2001, and subsequently issued a citation for grading without permit, acting recklessly and with deliberate indifference to his rights under the Fifth Amendment to the United States Constitution; plaintiff further asserts that "other residents and property owners have graded without a permit and have not been cited." Amended Complaint ¶¶ 45-47.  Plaintiff also avers that a Judge of the Court of Common Pleas of Allegheny County entered an order directing the Penn Hills Planning Commission to issue a grading permit on October 25, 2005, but that defendants have not yet issued the grading permit, thus "depriving him of his property without due process in violation of the Fifth Amendment . . ." and causing him "financial loss because he has not been able to use the property for three or

14

more years since he cannot grade it without the permit to do so," and also has suffered humiliation and loss of reputation.  Count XI, Amended Complaint, ¶¶ 48-50.

Plaintiff also claims that (unidentified) defendants' revocation and denial of grading permits denied him due process and equal protection of the laws, in violation of section 1983, because his permit was revoked without hearing and other residents of the community have graded property without permits and without citations. Counts XII - XIV, Amended Complaint, ¶¶ 51-63.

Defendants first assert that these claims should be dismissed under the governing two-year statute of limitations, *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003), because the revocation of his grading permit occurred in December 2002.  The Court agrees with plaintiff that his complaint states more of a continuing violation, and that the statute of limitations had not run when plaintiff filed this lawsuit.

However, the Court agrees with defendants that the claims must be dismissed because the Planning Commission has not yet issued a final decision, and therefore his claims are not ripe. Additionally, plaintiff has offered no evidence to support his equal protection or his substantive or procedural due process claims.

The Court of Appeals for the Third Circuit has addressed similar cases and has found that, unless and until the municipality has had the opportunity to render a final decision on land-use disputes, they are not ripe for federal intervention, the leading one perhaps being *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). In *Williamson*, the United States Supreme Court held that even assuming that a government

15

regulation may effect a "taking" for which the Fifth Amendment requires just compensation and requires payment of money damages to compensate for taking, such challenges are not ripe for federal court intervention unless the plaintiff has given local land-planning authorities the opportunity to render a final decision on the nature and extent of the impact of the zoning ordinances on plaintiff's property. The Supreme Court held that plaintiff's claim was premature because it had neither sought a variance from the new regulations nor pursued compensation through available state procedures. *Id.* at 193-94.

In *Taylor Investment, Ltd. v. Upper Darby Twp.*, 983 F.2d 1285 (1993), the Court of Appeals for the Third Circuit recognized that "strong policy considerations favor local resolution of land-use disputes," that "zoning is a delicate area where a county's power should not be usurped without giving the county an opportunity to consider concrete facts on the merits prior to a court suit," and that "land-use regulation generally affects a broad spectrum of persons and social interests, and . . . local political bodies are better able than federal courts to assess the benefits and burdens of such legislation." *Taylor Investment*, 983 F.2d at 1291, quoting, respectively, *Eide v. Sarasota County*, 908 F.2d 716, 726 n. 17 (11th Cir. 1990), cert. denied, 498 U.S. 1120 (1991) and *Rogin v. Bensalem Twp.*, 616 F.2d 680, 698 (3d Cir. 1980), cert. denied, 450 U.S. 1029 (1981). *Taylor Investment* extended the rule of *Williamson*, i.e., that taking claims under the Fifth Amendment are not ripe for federal court intervention unless local land-planning authorities have been afforded the opportunity to render a final decision, to equal protection and substantive due process claims. 983 F.2d at 1292-95. See also *Acierno v. Mitchell*, 6 F.3d 970 (3d Cir. 1993) (landowner's due process civil rights claims were not ripe for

federal court action where final decision had not been rendered on application for building permit).

Although the application process may have been frustrating to plaintiff, it is clear from defendants' submissions, i.e., the affidavit of Director Davidson and supporting correspondence and other documentation, that Penn Hills (particularly, Davidson) was making a good faith effort to assist plaintiff in meeting his ten conditions for site approval, and that no final decision rejecting the site plan had been made by the Planning Commission. Furthermore, Pennsylvania's statutory appeal mechanism for challenging decisions of local land use agencies, which plaintiff already had used successfully, was in place and remained available to plaintiff. Additionally, Pennsylvania provides an inverse condemnation mechanism whereby aggrieved land owners can seek just compensation for government takings of property. 26 Pa.C.S. §§ 1-408, 1-502(e), 1-609. Accordingly, plaintiff's claims are not ripe for federal action.

On the merits, plaintiff's substantive, procedural and equal protection claims are also deficient. Nothing in the conduct of the Penn Hills officials can be said to meet the prevailing "shockS the conscience" test for substantive due process violations in land disputes. *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 285-86 (3d Cir. 2004) (affirming this Court on the substantive due process claim). Nor has plaintiff offered any evidence to show that similarly situated persons have received more favorable treatment or that he was intentionally treated differently based on wholly arbitrary and irrational grounds.

As the Court of Appeals stated in *Eichenlaub*, every "appeal by a disappointed developer from an adverse ruling of the local planning board involves some claim of abuse of legal

17

authority, but 'it is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983.'" *Id*. at 286, quoting *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003). See also *Alvin v. Suzuki*, 227 F.3d 107 (3d Cir. 2000) (due process claim not ripe for federal action where plaintiff failed to avail himself of grievance mechanism which would have provided due process).

> **Counts XVI through XX.  Claims Arising from Penn Hills Planning Commission's Acceptance of Filing Fees for Seven Applications "to Appear Before the Planning Commission" Without Granting a Hearing.**

This grouping alleges that (unspecified) defendants took plaintiff's property, his filing fees to obtain a hearing on his permit applications, when other applicants were granted hearings, without just compensation and in violation of the "takings clause," due process and equal protection, and section 1983.  Counts XVI, due process under the Fourteenth Amendment; Count XVII, Fifth Amendment taking; Count XVIII, section 1983; Count XIX, equal protection under the Fourteenth Amendment; Count XX, section 1983.

Plaintiff offers no authority to support the proposition that he has a property interest in reasonable application fees, and defendants have shown that these fees are, in fact, reasonable and meant to offset the costs of review and inspection.  The filing of an application along with a fee does not guarantee that the application will be approved or that the Planning Commission will schedule a hearing on any incomplete applications. Moreover, these claims suffer the same fate and for the same reasons as the takings, equal protection and due process claims arising from revocation of the grading permit and citation for grading without permit on December 17, 2002.

**Counts XXIII Through XXV.  Claims Arising from Taxing Plaintiff's Property Which He Has Been Unable to Use Because of Denial of Grading Permits.**

This grouping alleges that (unspecified) defendants taxed his property but did not permit him to use it, in violation of the Fifth and Fourteenth Amendments (presumably, a "takings" claim, equal protection and deprivation of rights under color of state law.  Count XXIII, Fifth and Fourteenth Amendments; Count XXIV, equal protection under the Fourteenth Amendment; Count XXV, section 1983.

Plaintiff offers no authority for the novel proposition that taxing property while declining to issue permits for certain development of the property can constitute a taking, nor has he offered any evidence of similarly situated residents of Penn Hills whose property was not taxed. Presumably, the taxes on his property are based upon their assessed valuation under their current usage.  Moreover, these claims suffer the same fate and for the same reasons as the takings, equal protection and due process claims arising from citation for grading without permit on December 17, 2002.

**Counts XXVII Through XXIX, and XXXI.  Claims Arising from Alleged Restrictions on Right to Speak at Meetings.**

This grouping alleges that (unspecified) defendants prevented or restricted plaintiff from speaking at Council and Planning Commission meetings wherein other residents of Penn Hills spoke, and retaliated against him (as described in Counts I through XXX) for exercising his right to speak at a public meeting.  Count XXVII, restriction on right to speak under First and Fourteenth Amendments; Count XXVIII, equal protection under the Fourteenth Amendment; Count XXIX, section 1983; Count XXXI, retaliation under First Amendment and section 1983.

As the United States Court of Appeals for the Third Circuit explained:

> It is clearly established that when a public official excludes a elected representative or a citizen from a public meeting, she must conform her conduct to the requirements of the First Amendment. See, e.g., *Eichenlaub v. Twp. of Ind.*, 385 F.3d 274, 281 (3d Cir. 2004) (applying public forum analysis to township official's curtailing of allegedly disruptive speech at a public meeting); . . . It is also clearly established that content - based restrictions on speech in a public forum are subject to strict scrutiny, while viewpoint - based restrictions violate the First Amendment regardless of whether they also serve some valid time, place, manner interest . . . .

*Monteiro v. City of Elizabeth*, 436 F.3d 397, 404 (3d Cir. 2006) (additional citations omitted).

Plaintiff does not dispute defendants' averments that there is no evidence to show he was ever censored or precluded from speaking at any Council or Planning Commission meeting he attended, and that plaintiff was not prevented from attending and speaking at any such meetings so long as he complied with all of the established procedures for conduct of such meetings, although he asserts vaguely that the presence of an officer had a "chilling effect" on his speaking at meetings. In the absence of any evidence to support his First Amendment claim, this claim must be resolved in defendants' favor, and all of the related claims suffer the same fate.

**Additional Pending Motions.**

Defendants also have filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 37(b)(1)(C) (doc. no. 50) on the grounds that plaintiff continuously refused to provide requested documents that were relevant to his claims despite Court order to do so, some of which were produced after the motion was filed, but not all, and a Motion in Limine (doc. no. 66) seeking to preclude plaintiff from introducing any evidence at trial for failure to file Plaintiff's Pretrial Statement which was due on January 8, 2007. Defendants filed their Pretrial Statement

in timely fashion, on January 18, 2007.  Also on that day, the Court entered an Order suspending further pretrial submissions until further Order of Court.  Plaintiff's responses to these motions do not set forth good cause for the dilatory conduct and untimely filings, or for the failure to request leave of Court to enlarge the time for filing or for compliance with discovery requests.

The Court observes that these motions raise substantial claims of delay and dilatory conduct that would appear to call for serious sanctions, and that plaintiff's responses to the motions are not convincing.  Nevertheless, the Court need not and does not resolve those pending motions, which will be rendered moot by the order granting summary judgment on all counts for defendants.

An appropriate order will be entered.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All counsel of record